IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SAMUEL STALEY,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation and LYNN<br>LUDWIG,<br><br>　　　　　Defendants. | CV 14-136-BLG-SPW<br><br>OPINION and ORDER |

Plaintiff Samuel Staley ("Staley") initially filed this action in a Montana state court. Defendants BNSF Railway Company ("BNSF") and Lynn Ludwig ("Ludwig") (collectively the "Defendants") removed the case to this Court on both diversity and federal question grounds. Although Staley and Ludwig are both Montana citizens, Ludwig contends that she was fraudulently joined and should not be considered for diversity purposes. The Defendants also argue that Staley's claims are completely pre-empted by federal law, even though Staley only alleges Montana common law negligence in his Complaint. Staley filed a Motion for Remand. BNSF has also filed a Motion for Protective Order Staying Discovery. For reasons discussed below, the Court grants Staley's motion and remands this case back to state court. Because this action is remanded to state court, the Motion for Protective Order is moot.

1

# I. Background

## A. The accident

The following facts are taken from Staley's Complaint and are assumed true. BNSF operates a railroad line that generally runs east/west through the town of Hysham, Montana. In Hysham, the line consists of two tracks: one mainline track and a parallel siding track. There are only two crossings that allow motorists to cross the railroad line in Hysham. The west side crossing ("West Crossing") is protected and guarded by automatic warning gates and lights. About one-quarter mile to the east is the other crossing ("East Crossing"). The East Crossing is only equipped with crossbuck signs.

In September 2012, BNSF designated Ludwig as the "point of contact" for any issues that arose in Hysham. Soon after her appointment, Hysham town officials began complaining to Ludwig that BNSF trains routinely were standing unoccupied on the siding track for extended periods of time and blocking the West Crossing. When a train blocked the West Crossing, motorists were forced to use the East Crossing. Not only was the East Crossing unprotected, but the parked trains blocked southbound motorists' view of any approaching eastbound trains using the mainline. Despite these concerns, Ludwig and BNSF ignored the Hysham officials and continued to block the West Crossing.

On October 13, 2013, Staley was driving a beet truck south through Hysham. A BNSF train was standing unoccupied on the siding track in a manner that completely blocked the West Crossing, forcing Staley to use the East Crossing. As he approached the East Crossing, the parked train blocked Staley's view of the mainline. When Staley began crossing the track, a previously unseen eastbound train collided with his truck. Staley suffered severe injuries.

B. Procedural history

On September 15, 2014, Staley sued BNSF and Ludwig in the Montana Sixteenth Judicial District, Treasure County. In his Complaint, Staley alleges that he is a Montana citizen, Ludwig is also a Montana citizen, and that BNSF is a foreign corporation. Staley also claims that BNSF and Ludwig's negligence caused his injuries. Specifically, Staley contends that the Defendants breached their standard of care by: (1) Repeatedly blocking the West Crossing and forcing motorists to use the East Crossing; (2) Obstructing the view of oncoming eastbound trains for southbound motorists at the East Crossing; (3) Arrogantly ignoring the complaints about the unsafe practices at the crossings in Hysham; (4) Failing to properly sound an audible warning at the East Crossing in violation of Montana and federal law; (5) Failing to operate the train at a safe speed when approaching the East Crossing, which "constituted a unique, specific, and individual hazard;" (6) Failing to keep a proper lookout for vehicles approaching

3

the East Crossing; (7) Failing to install proper warning signs and signalization at the East Crossing; and (8) The catch-all "otherwise failing to use due care under the circumstances."

The Defendants removed the case to this Court on October 13, 2014. In their Notice of Removal, the Defendants claim that complete diversity exists among the parties. The Defendants acknowledge that both Staley and Ludwig are Montana citizens. However, the Defendants contend that Staley fraudulently joined Ludwig to avoid federal jurisdiction. In addition, BNSF claims that federal jurisdiction exists as Staley's negligence claims are completely pre-empted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA").

Staley moved to remand the case back to state court. Staley argues that he pled sufficient facts to state a cause of action against Ludwig. If true, then Staley did not fraudulently join Ludwig and diversity jurisdiction does not exist. Staley also argues that his claims are not completely pre-empted by the ICCTA. He contends that even if successful, his negligence claims will not unreasonably burden BNSF's operations.

C. Supplemental Evidence

In support of their respective arguments, both Staley and the Defendants have attached additional evidence to their briefs. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) ("[F]raudulent joinder claims may be

4

resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony") (citation omitted).

Staley provides emails involving a Hysham town official and BNSF employees. Prior to September 2012, Josh Capps served as the Supervisor of Engineering Support and communicated with Hysham town official C. Robert Keele, Jr. In an email to Capps, Keele raised the issue of rail traffic blocking the West Crossing. Keele noted that, "One of [his] council members did speak with the train master in Forsyth, and in response one train has been broken to allow crossing at this intersection. This occurred about a month ago and has not been done since." (Doc. 3-6). Keele asked BNSF to resolve the issue.

The same day, Capps forwarded Keele's email to Ludwig. Capps also included the following message:

Lynn,

I sent an email to the trainmaster regarding this issue 2 weeks ago, so if you and Rob make it into Forsyth please discuss this with him because the last train that was there had more than enough room to cut the crossing. Mr. Keele, Lynn Ludwig will now be your point of contact for any issues in Hysham since I no longer work in Montana.

Thanks,

Josh Capps

(Doc. 3-7). However, according to Keele's later emails, BNSF did not resolve the issue. In an email sent on September 7, 2012, Keele noted to Ludwig that although

5

he may have been "beating a dead horse," parked trains continued to block the West Crossing. (Doc. 3-9). In one instance, a parked train blocked the West Crossing for two and a half days. (*Id.*)

On October 14, 2013, the day after Staley's accident, Keele emailed Ludwig that he could not "begin to express the level of frustration I have with you and BNSF regarding this issue." (Doc. 3-10). Keele wrote that despite his requests that BNSF modify its practice of blocking the West Crossing, "[t]hese requests have gone largely unanswered and even more so, arrogantly ignored." (*Id.*). Ludwig quickly responded to that email and claimed that she had been in contact with the county[1] regarding the crossing and that she had not ignored Keele's complaints.

To counter Staley's allegations, the Defendants attached an affidavit from Ludwig. In Ludwig's affidavit, she claims that she did not have any involvement in placing the trains at the West Crossing. (Doc. 7-1 at 2). Ludwig is a Roadmaster for BNSF. (*Id.* at 1). As a Roadmaster, Ludwig claims that she only supervises employees responsible for maintaining the track and coordinates work to be done at crossings. (*Id.* at 3). In that capacity, Ludwig "had contact with Treasure County officials on road and crossing surface issues." (*Id.*) Other BNSF departments determined where to place trains. (*Id.* at 2). Ludwig states that she

---

[1] Presumably Ludwig was referring to officials of Treasure County, in which Hysham is located.

6

did not ignore Keele's complaints, but rather forwarded them to the proper department. (*Id.* at 3). After that, Ludwig claims there was nothing more she could do. (*Id.*). Ludwig also states that she had no authority regarding the placement of warning signs or lookouts at the East Crossing. (*Id.* at 4).

## II. Legal Standard for Removal

A defendant may remove a case to federal court if the federal court has original jurisdiction over the case. 28 U.S.C. § 1441(a). Relevant here, there are two grounds for federal original jurisdiction. First, federal courts have original jurisdiction if there is complete diversity among the parties and the amount in controversy is at least $75,000. 28 U.S.C. § 1332(a). Complete diversity means that "each of the plaintiffs must be a citizen of a different state than each of the defendants." *Morris*, 236 F.3d at 1067. Second, federal courts have original jurisdiction if the action arises under federal law. 28 U.S.C. § 1331. The defendant has the burden of overcoming a strong presumption against removal. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Any doubt should be resolved in favor of remand to the state court. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

## III. Fraudulent Joinder

The Defendants' first argument is that Staley fraudulently joined Ludwig. Given that Staley and Ludwig are both Montana citizens, complete diversity does

7

not exist on the complaint's face and remand is required unless the Court finds that Ludwig was fraudulently joined. The Defendants contend that under Montana law, Ludwig cannot be held responsible for Staley's accident. Staley counters that he has stated a sufficiently cognizable claim against Ludwig to defeat the Defendants' fraudulent joinder argument. The Court agrees with Staley.

Fraudulent joinder is a term of art. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Id.* Fraudulent joinder only occurs when "a plaintiff has no possibility of bringing a cause of action against a resident defendant, and therefore has no reasonable grounds to believe he has such an action." *IDS Prop. Cas. Ins. Co. v. Gambrell*, 913 F. Supp. 2d 748, 752 (D. Ariz. 2012).

If the resident defendant's joinder was fraudulent, then that defendant's presence is ignored for purposes of determining diversity. *Morris*, 236 F.3d at 1067. While the defendant may present summary judgment type evidence to show fraudulent joinder, the "inquiry is far different from the summary judgment type inquiry." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990). Instead, the test is akin to an analysis made in a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th Cir. 1975). Thus, this

8

Court may only "look to material outside the pleadings for the limited purpose of determining whether there are undisputed facts that negate the claim." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (internal quotation omitted).

The defendant bears the burden of showing fraudulent joinder by clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Any contradictory evidence should be resolved in favor of the plaintiff. *Anderson v. BNSF Ry. Co.*, No. CV 08-14-H-DWM, 2008 WL 5412454, at *2 (D. Mont. May 21, 2008). "In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court." *Albi v. Street & Smith Publications*, 140 F.2d 310, 312 (9th Cir. 1944).

Here, the Court finds that the Defendants have not met their burden of showing that Staley cannot state a cause of action against Ludwig. Generally speaking, under Montana law employees cannot be personally liable for acts taken on behalf of a corporation. *Sherner v. Nat'l Loss Control Servs. Corp.*, 124 P.3d 150, 155 (Mont. 2005). However, there is an exception if the employee commits a tort within the scope of employment. *Anderson*, at *1. To hold the employee personally liable, the employee must be either personally negligent or have taken

9

"actions that were tortious in nature." *Crystal Springs Trout Co. v. First State Bank of Froid*, 732 P.2d 819, 823 (Mont. 1987). Where "there are allegations against an employee personally, the Montana Supreme Court has allowed the employee to be named as a defendant." *Caven v. Burlington N. & Santa Fe Ry. Co.*, No. CV 04-41-GF-SEH, 2004 WL 5704818, at *1 (D. Mont. Sept. 20, 2004) (citing *Dagel v. City of Great Falls*, 819 P.2d 186, 195 (Mont.1991)).

Staley claims that Ludwig negligently ignored complaints and the alleged unsafe conditions that existed at the West Crossing. Staley points out that Keele's previous point of contact, Capps, apparently played some role in rearranging a train that had been blocking the West Crossing. (Doc. 3-7). Since he had moved from Montana, Capps notified Keele that Ludwig would be the "point of contact for any issues in Hysham." (*Id.*). According to Staley, Ludwig ignored Keele's emails until after Staley's accident. Staley also claims that Ludwig never told Keele to contact someone else regarding the trains blocking the West Crossing. These allegations are sufficient to pursue a negligence claim against Ludwig personally. The alleged lack of response and ignoring of safety complaints support Staley's claim that Ludwig was personally negligent.

In response, Ludwig relies on her affidavit in which she claims to have passed along Keele's complaints to the proper department within BNSF. Ludwig's affidavit largely generally denies Staley's allegations that Ludwig ignored

complaints about the West Crossing. This general denial is similar to an answer and is insufficient to overcome the burden of showing fraudulent joinder. *See Mattress Warehousing, Inc. v. Power Mktg. Direct, Inc.*, No. 08-CV-141-LRR, 2009 WL 395162, at *6 (N.D. Iowa Feb. 17, 2009) ("Were courts to find fraudulent joinder whenever presented with a defendant's self-serving affidavit, few cases would ever be remanded and federal jurisdiction would greatly expand"); *Smith v. Smithkline Beecham Corp.*, No. CIV. A. 10-73, 2010 WL 3432594, at *4 (E.D. Ky. Aug. 30, 2010) ("A solitary self-serving affidavit cannot eliminate the prospect of any dispute, particularly where the complaint is in direct disagreement"); and *Hampton v. Georgia-Pac. L.L.C.*, No. CIV.A. 11-0363-KD-N, 2011 WL 5037403, at *6 (S.D. Ala. Oct. 24, 2011) (Defendants' "denials of responsibility are not sufficient to satisfy the 'clear and convincing' standard of proof to carry defendants' burden of showing that plaintiff cannot possibly establish a cause of action against the individual defendants"). Instead, Ludwig's affidavit shows that there is contradictory evidence regarding Staley's claim that safety complaints went "largely unanswered and…arrogantly ignored." (Doc. 3 at 7).

Staley and the Defendants present conflicting claims and evidence as to whether Ludwig was personally negligent. Accordingly, the Court finds that the

Defendants did not meet their burden of showing that Ludwig was fraudulently joined. This Court does not have diversity jurisdiction.

## IV. Complete Preemption

The Defendants argue that even if diversity jurisdiction does not exist, this action presents a federal question because Staley's claims are completely preempted by ICCTA. The Defendants contend that this action would have the effect of impermissibly managing or regulating train operations. Staley argues that BNSF would not be burdened, as they had previously separated trains to avoid blocking the West Crossing. The Court finds that, as alleged, this action would not have the effect of unreasonably burdening or regulating BNSF's operations. Accordingly, because the ICCTA does not wholly displace Staley's negligence claims, this action is not completely preempted.

Typically, the "well-pleaded complaint rule" determines the presence of federal-question jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "For removal to be appropriate under the well-pleaded complaint rule, a federal question must appear on the face of a properly pleaded complaint." *Ansley v. Ameriquest Mortgage Co.*, 340 F.3d 858, 861 (9th Cir. 2003). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). A defense is not part of the "well-pleaded

complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). Therefore, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14 (1983).

An exception to the "well-pleaded complaint rule" is the doctrine of complete preemption. *Ansley*, 340 F.3d at 861. Complete preemption only occurs when a "federal statute wholly displaces the state-law cause of action." *Beneficial Nat. Bank*, 539 U.S. at 8. The statute must so completely preempt a particular area of law that any civil complaint in that area necessarily presents a federal question. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). In such "extraordinary situations," Congress must have "clearly manifested an intent to convert state law claims into federal-question claims." *Ansley*, 340 F.3d at 862.

Therefore, a removing defendant must go beyond showing that the merits of the plaintiff's claims are preempted by federal law. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009). "The fact that preemption might ultimately be proved does not allow removal." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998). Instead, the preemptive force of a statute must be so strong

that it completely preempts the entire area of state law. *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005).

Here, the Defendants argue that the ICCTA completely preempts Staley's claims. The ICCTA, found at 19 U.S.C. § 10101, *et seq.*, abolished the Interstate Commerce Commission, established the Surface Transportation Board, and sought to establish exclusive federal regulation of the railroads. *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442-43 (5th Cir. 2001). The ICCTA's preemption clause provides that the Surface Transportation Board has exclusive jurisdiction over:

> **(1)** transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, *rules* (including car service, interchange, and other operating rules), *practices*, routes, services, and facilities of such carriers; and
>
> **(2)** the construction, acquisition, *operation*, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,

49 U.S.C. § 10501(b) (emphasis added). The remedies provided in the ICCTA preempt any remedies provided by state law. *Id.*

In other words, the "ICCTA preempts all state laws that may reasonably be said to have the effect of managing or governing rail transportation." *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010). This preemptive effect is not limited to direct economic regulation. *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1031 (9th Cir. 1998). The ICCTA also

preempts state common law duties that impact how a railroad operates their lines. *Friberg*, 267 F.3d at 444. However, the ICCTA does not preempt state laws "of general applicability that do not unreasonably interfere with interstate commerce." *Ass'n of Am. Railroads*, 622 F.3d at 1097. The ICCTA allows the "continued application of laws having a more remote or incidental effect on rail transportation." *Id.* (quoting *N.Y. Susquehanna & W. Ry. Corp. v. Jackson*, 500 F.3d 238, 252 (3d Cir.2007)).

This Court finds persuasive the Fifth Circuit's decision in *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011). In *Elam*, the plaintiffs drove their car into a train stopped at a crossing. *Id.* at 801. The plaintiffs sued the defendant railroad in a Mississippi state court under two state law tort theories: (1) That the railroad was negligent per se for violating Mississippi's antiblocking statute, which limited the time a train may park at a road crossing; and (2) that the railroad negligently failed to warn of the train's presence at the crossing. *Id.* at 802. After the railroad removed the action to federal court, the plaintiffs moved to remand it back to state court. *Id.* The district court found that the plaintiffs' claims were completely preempted by the ICCTA and denied the motion to remand. *Id.*

The Fifth Circuit reversed. As to the plaintiffs' negligence per se claim, the Fifth Circuit agreed that it was completely preempted. *Id.* at 803. The Fifth Circuit found that Mississippi's antiblocking statute had the effect of managing

15

railroad operations by limiting train speed, length, and scheduling. *Id.* at 807. As it directly reached into the area of economic regulation, the antiblocking statute was completely preempted by the ICCTA. *Id.* Since the plaintiffs' negligence per se was based solely on the antiblocking statute, it was also completely preempted. *Id.*

The Fifth Circuit reached the opposite conclusion on whether the ICCTA completely preempted the plaintiffs' simple negligence claim. *Id.* at 813. The Fifth Circuit noted that "[a] typical negligence claim seeking damages for a typical crossing accident...does not directly attempt to manage or govern a railroad's decisions in the economic realm." *Id.* The effect of state negligence claims "on rail operations are merely incidental." *Id.* Therefore, the ICCTA did not completely preempt the plaintiffs' negligence claim. *Id.*

Similar to the plaintiffs in *Elam*, Staley is asserting simple negligence claims against the Defendants. Staley does not rely on Montana's antiblocking statute.[2] Instead, Staley alleges that BNSF created an unsafe condition that constituted a "unique, specific and individual hazard." (Doc. 5 at 3). There were only two crossings in Hysham – one guarded and one unguarded. According to Staley, BNSF blocked the guarded crossing and forced motorists to use the unguarded crossing without providing adequate warnings for unseen oncoming trains. The

---

[2] Montana's antiblocking statute is found at Mont. Code Ann. § 69-14-626.

16

Court agrees that as alleged in Staley's Complaint, the situation was unique and not likely to be frequently replicated. Therefore, by looking at Staley's Complaint, his action would not unreasonably burden BNSF's operations.

Staley does not plead facts that would "unreasonably interfere with interstate commerce." *Ass'n of Am. Railroads*, 622 F.3d at 1097. Nor has Congress manifested an intent for the ICCTA to preempt all negligence claims against the railroads. *Elam*, 635 F.3d at 813. Since ICCTA does not completely preempt a negligence claim that would have "merely incidental" effects on a railroad's operations, *Id.*, Staley's claims are not completely preempted. This does not mean that BNSF cannot raise a preemption defense before the state court. Rather, this Court only concludes that the preemptive force of the ICCTA is not so strong that it preempts the entire area of negligence law against the railroads. Therefore, Staley's allegations are not "necessarily federal in character" and this Court does not have federal question jurisdiction. *Metro. Life Ins. Co.*, 481 U.S. at 63-64.

## V. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

1. Staley's Motion to Remand (Doc. 2) is GRANTED.

2. BNSF's Motion for Protective Oder Staying Discovery (Doc. 8) is DENIED as moot.

3. The Clerk of Court shall remand this case to the Montana Sixteenth Judicial District Court, Treasure County.

DATED this 27th day of February, 2015.

Susan P. Watters
SUSAN P. WATTERS
United States District Judge